**\*E-FILED 9/19/08\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONG AH TIRE & RUBBER CO., LTD.,<br><br>    Plaintiff,<br><br>  v.<br><br>GLASFORMS, INC.,<br><br>    Defendant/Third-Party Plaintiff,<br><br>  v.<br><br>CTG INTERNATIONAL<br>(NORTH AMERICA) INC., et al.,<br><br>    Third-Party Defendants.<br>_____/ | NO. C 06-3359 JF (RS)<br><br>**INTERIM ORDER REGARDING DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION FOR SANCTIONS** |

## I. INTRODUCTION

Pursuant to Rules 11, 26(g), and 37(a)(4) of the Federal Rules of Civil Procedure, defendant/third-party plaintiff Glasforms, Inc. ("Glasforms") moves for sanctions against third-party defendant Taishan Fiberglass, Inc. ("Taishan") for the spoliation and destruction of documents. Taishan opposes the motion. As set forth below, the Court will require the parties to provide further specific information in order to resolve the pending motion.

## II. BACKGROUND

A. <u>General Background</u>

Glasforms manufactures fiberglass reinforced high voltage insulator rods. Taishan makes fiberglass. CTG, which is Taishan's United States distributor, supplied Glasforms with fiberglass in 2004. Glasforms asserts in this third party action that the fiberglass Taishan manufactured and

1

1  supplied was contaminated with graphite. Graphite contamination causes fiberglass to conduct
2  electricity, a dangerous latent defect. Glasforms used the graphite contaminated fiberglass to
3  manufacture its insulation products. In October 2004, Glasforms alleges that it began to suffer
4  mysterious smoking, arcing, and fires in its rod manufacturing process, which coincided with the use
5  of Taishan's fiberglass. On December 8, 2005, one of Glasforms' customers reported fifteen
6  instances where the insulator rods caused damage. On January 12, 2006, Glasforms filed a third
7  party complaint advancing six claims for relief against Taishan and CTG. Taishan contends that
8  Glasforms' own production processes caused the problems of which it complains, as evidenced by
9  the fact that Glasforms experienced electrical failures both before and after it used Taishan's
10 fiberglass to manufacture insulator cores.

11      For three days in February 2008, Taishan's manager of quality assurance, Zhang Guo,
12 testified pursuant to Rule 30(b)(6). Zhang, according to Glasforms, was unable to provide
13 knowledgeable testimony on the majority of the sixteen topics designated in the deposition notice.
14 After oral argument on Glasforms' motion to compel, and a subsequent review of Zhang's complete
15 deposition transcript, by Order dated August 25, 2008, this Court ordered Taishan to produce a
16 knowledgeable and fully prepared witness or witnesses to testify in San Jose, California, concerning
17 the ten topics not adequately addressed by Zhang in the prior Rule 30(b)(6) deposition.

18      By that same order, the Court required Taishan to conduct a diligent search and reasonable
19 inquiry into each of Glasforms' requests for production and to produce all internal email regarding
20 the subject matter of this case, communications between Taishan and CTG, relevant documents
21 Taishan identified but did not produce, and documents for which Zhang admits no search was
22 previously undertaken. If no documents are found, Taishan will be required to submit a declaration
23 stating that a search was made for all responsive documents, explaining why any responsive
24 documents could not be produced, or providing the circumstances under which the responsive
25 documents were misplaced or destroyed.

26      Along with its motion to compel referred to above, Glasforms filed a motion for sanctions
27 against Taishan. In that motion, Glasforms argues that Taishan intentionally destroyed relevant
28 documents and other items either when litigation was reasonably anticipated or after litigation

2

1  commenced, and continues to refuse to comply with its obligations under Rule 30(b)(6).  Glasforms
2  seeks an order: (1) instructing the finder of fact to draw an adverse inference that the spoiled or
3  destroyed evidence would have been unfavorable to Taishan; (2) awardng $15,790 in motion-related
4  expenses pursuant to Rule 37(a)(5)(A); and (3) awarding further monetary sanctions the Court
5  deems proper to deter Taishan's spoliation abuses.

6  Taishan claims it was not obligated to preserve every conceivable relevant piece of evidence
7  because it could not be expected to anticipate that litigation would ensue months before Glasforms
8  filed suit.  Taishan claims it did not know Glasforms intended to file suit until six days before the
9  filing occurred.  Taishan argues, therefore, that Glasforms is not entitled to an adverse inference
10 instruction to the jury both because it was under no duty to preserve materials and because
11 Glasforms has not shown that any missing document would have been favorable to it.  Taishan,
12 citing *Siam v. Potter*, No. C 04-00129 MHP, 2006 WL 1530155, at *3 (N.D. Cal. June 5, 2006),
13 argues that absent some indication unproduced evidence would have been favorable to the moving
14 party, no adverse inference instruction is warranted.

15 B.  General Timeline

16 As noted above, for three days Zhang testified pursuant to Rule 30(b)(6).  Based on his
17 deposition testimony and evidence Glasforms and Taishan submitted, a picture begins to emerge
18 denoting what Taishan and CTG knew and when.  In the latter half of 2004, Zhang first remembered
19 learning of Glasforms' complaints about the fiberglass problems.  Zhang heard this from Zhicun Li
20 ("Calvin Li"), CTG's CEO in North America.  Zhang was later informed in October 2004 that
21 Glasforms was experiencing arcing and fires in its production line that occur when there is metal
22 contamination.  Near the end of 2004, Glasforms sent rod samples to Taishan, which were tested.  In
23 December 2004, Glasforms terminated all fiberglass orders.  At the end of February 2005, Zhang
24 and an engineer, Xiaofeng Guo, prepared a report ("seventeen point report") investigating Taishan's
25 assembly line in response to Glasforms' contamination complaints.  While Zhang did not elaborate
26 during his deposition on the report, he did say that it suggests the probability of contamination from
27 certain sources, and that one such source, graphite powder, was ranked as a high probability.  This
28 report was faxed a short time thereafter to CTG.  After faxing the document, Zhang did not receive

3

1 any further instructions about adding information to the report. On September 6, 2005, Calvin Li
2 stated in a letter that the report and CTG's own technical findings confirmed an isolated case of
3 graphite contamination. In 2006, Taishan received notice it was being sued and instructed its
4 employees to preserve relevant documents. Glasforms instituted this action on January 12, 2006.

C.  Document Destruction

In line with preserving relevant documents, Taishan, CTG, and Glasforms are members of the International Organization for Standardization ("ISO"). ISO compliant companies are required to maintain records for a reasonable amount of time so that they will be able to trace root causes of problems when they occur, even if several years have elapsed. Dunn. Decl., Ex. M., § 4.2.4. Taishan also has a document destruction policy that purports to preserve records for a certain amount of time before they are destroyed.

A number of items/documents appear to have been destroyed or lost despite that policy. First, the document destruction policy provides that tunnel oven in/out records are to be stored for two years. Zhang admitted, however, that these records for the second half of 2004 were destroyed when they should have been maintained until at least the second half of 2006. Christopher Decl., Ex. Y at 360-64. Zhang was unaware as to when the documents were destroyed. *Id*. at 364-64. Second, the graphite rollers and gathering shoes that experienced smoking and fires that Taishan received as samples for analysis from Glasforms, performed tests on, and sent to a third party for testing were destroyed/lost. Christopher Decl., Exs. Q and Y at 352; Pfaff Decl. Third, Taishan's shift change records and equipment repair and maintenance logs from 2004 were destroyed despite what was required in the destruction policy. Christopher Decl., Ex. Y at 466-67, 475. Fourth, faxes that Zhang admits were sent to CTG regarding Taishan's seventeen point report identifying possible contamination sources appear to have been lost. Finally, while it is unclear to what particular documents Zhang was referring, he admitted that relevant documents and items likely were destroyed and therefore cannot be retrieved.

III. LEGAL STANDARD

The destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation is referred to as spoliation.

4

*Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it.  *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982); *see Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("Where one party wrongfully denies another the evidence necessary to establish a fact in dispute, the court must draw the strongest allowable inferences in favor of the aggrieved party.").

"'The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *World Courier v. Barone*, No. C 06-3072 TEH, 2007 WL 1119196, at *1 (N.D. Cal. April 16, 2007) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *see Ameripride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. CIV S-00-113 LKK/JFM, 2006 WL 2308442, at *4 (E.D. Cal. Aug. 9, 2006) ("[A]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.").  The Ninth Circuit has not expressly defined the term "anticipated litigation." *Hynix Semiconductor Inc. v. Rambus, Inc.*, No. C-00-20905 RMW, 2006 WL 565893, at * 21, 24 (N.D. Cal. Jan. 5, 2006) (finding that litigation became probable when counsel was selected). Additionally, "[t]he obligation to retain discoverable materials is an affirmative one; it requires that the agency or corporate officers having notice of discovery obligations communicate those obligations to employees in possession of discoverable materials." *Nat'l Ass'n of Radiation Survivors*, 115 F.R.D. at 557-58.

As part of their inherent power, district courts have broad discretion in imposing discovery sanctions.  *See Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). Because of their potency, these inherent powers must be exercised with restraint and discretion.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).  Sanctions must be fashioned to address the particular conduct in question.  *Id*. at 765.  When choosing among possible sanctions, the court should consider a sanction designed to: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the

5

1  risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore a
2  prejudiced party to the same position he or she would have been in absent wrongful destruction of
3  evidence by the opposing party. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.
4  1999).

## IV.  DISCUSSION

Glasforms requests an adverse inference instruction as an evidentiary sanction for the spoliation of evidence. Several district courts in California use the Second Circuit's three-part test as set forth in *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002), to determine whether an adverse inference instruction is appropriate. *See*, *e.g.*, *World Courier*, 2007 WL 1119196, at *1.[1] The three-part test requires that the party seeking an adverse inference instruction establish that: (1) the party having control over the evidence had an obligation to preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense. *Napster*, 462 F. Supp. 2d at 1078. As to the second prong, the mental culpability factor is satisfied where the party acted knowingly or negligently. *Residential Funding Corp.*, 306 F.3d at 108.

For example, in *World Courier*, 2007 WL 1119196, *1, plaintiff sought sanctions after defendant's husband destroyed a computer hard drive containing data. The court stated that there is an affirmative duty to preserve evidence even when it is not directly within the party's control so long as that party has access to or indirect control over such evidence. *Id*. Finding that to have been the situation, the court concluded that an adverse inference instruction was appropriate, but deferred ruling on the particular scope of such an instruction without a full evidentiary record. *Id*. at *1-2.

Turning to this action, the record thus far developed regarding Taishan's discovery conduct presents a troubling picture. Likely relevant materials appear to be either missing or not the subject of an appropriate search. At the same time, the record at this juncture does not answer the question

---

[1] Other California district courts using the three-part test include: *In re Napster*, 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006); *Cyntegra, Inc. v. Idexx Labs., Inc.*, No. CV 06-4170 PSG, 2007 WL 5193736, at *2 (C.D. Cal. Sept. 21, 2007); *AmeriPride Servs., Inc.*, 2006 WL 2308442, at *5 n.6; *Hamilton v. Signature Flight Support Corp.*, No. C 05-0490 CW (MEJ), 2005 WL 3481423, at *3 (N.D. Cal. Dec. 20, 2005); *Hous. Rights Ctr. v. Sterling*, No. CV 03-859 DSF, 2005 WL 3320739, at *7 (C.D. Cal. Mar. 2, 2005).

6

of whether intentional and improper spoliation of evidence has occurred. First, it is difficult to peg who knew what when, in terms of anticipating litigation, based on Zhang's deposition and the other evidence submitted. Based on the timeline from Zhang's testimony discussed above, it can safely be said that Glasforms terminated all orders of CTG glass in December 2004. It is also apparent that Taishan knew it might have problems with its product when it made its seventeen point report in 2005 as suggested on September 6, 2005, by Calvin Li, CTG's CEO, when he stated in a letter that: "Your report and our technical findings does confirm an isolated case of graphite contamination." Pfaff Decl., Ex. G. This date could signal "probable litigation." Upon receipt of this letter, Glasforms would not be expected to send immediately a threatening letter indicating a lawsuit was imminent when first being apprised of the possible source of the problem. At the same time, the party making such a claim arguably should know a dispute is looming.

Second, there seems to be a discrepancy between the document destruction policy and what was preserved here, which is tied to when Taishan could have reasonably anticipated suit. For instance, Zhang admitted that Taishan's tunnel oven in/out records for the second half of 2004 were destroyed, but the document destruction policy states that those records should have been stored for two years, until at least the second half of 2006. Zhang stated that he did not know when the documents were destroyed. In that Glasforms instituted this action on January 12, 2006, these records were destroyed either before the two year lapse or after commencement of litigation. Worse yet, Taishan cannot confirm whether the production records were destroyed before or after litigation began because the records authorizing destruction have also apparently been destroyed.[2] Christopher Decl., Ex. Y at 363-64. Taishan has not explained why selective documents that just so happen to be important to the present litigation were destroyed in violation of Taishan's document destruction policy. Furthermore, as noted above, Taishan and CTG as members of the ISO, are

---

[2] As noted above, other destroyed/lost materials are:
(1) Taishan's shift change records and equipment repair and maintenance logs from 2004 in violation of the destruction policy.
(2) The graphite rollers and gathering shoes that experienced smoking and fires that Taishan received as samples for analysis, performed tests on, and sent to a third party for testing.
(3) Faxes that Zhang admits were sent to CTG regarding Taishan's seventeen point report identifying possible reasons of contamination.

7

required to maintain records for a reasonable amount of time, a policy that does not appear to have been implemented.

Although Taishan presents evidence that it had valid reasons for destroying possible evidence, its arguments ignore the vital question at issue: whether Taishan intentionally destroyed documents and items in anticipation of litigation and also in violation of its own document destruction policy. Even if Taishan was merely unaware of litigation, it fails to answer why it did not follow its otherwise applicable document program. Certainly, post filing in 2006, the document destruction procedures under its policy should have been on hold.

Third, Zhang admits in his deposition that relevant documents and items were destroyed and are permanently lost. It is unclear, however, what exactly was destroyed, when they were destroyed, and, as stated above, when Taishan could have anticipated litigation. By the very fact of their destruction, though, the vast majority of the destroyed documents can no longer be identified. For example, in September 2005 when Taishan admitted its rollers contained an isolated case of graphite contamination, it should have known that the graphite rollers were relevant, and the disposal of these rollers as well as other documents is without adequate explanation.

At this juncture, further information is required in order to determine what, if any, sanctions should be assessed against Taishan. Presumably, the continued Rule 30(b)(6) process should shed light on the issues addressed above. In any event, the parties will need to address specifically by declaration or other admissible evidence:[3]

(1) Why was the document destruction policy not followed?

(2) Who was responsible for not following the document destruction policy?

(3) When were the items identified above destroyed, and when were they supposed to be

---

[3] Taishan's contention that it is reasonable to conclude documents simply never existed in the quantities Glasforms envisions is unavailing. On this record, it is not possible to conclude with any certainty how many documents likely were lost or how important such documents might have been, but that uncertainty weighs against Taishan. Additionally, even if the evidence does not support a conclusion of intentional document destruction or that Taishan or its employees specifically intended to deprive Glasforms of relevant evidence, the record seems to demonstrate a willful indifference at Taishan towards ensuring that relevant documents were preserved, collected, and produced prior to 2006.

destroyed under the document destruction policy?

(4) When did Taishan and CTG select their counsel for events relating to this litigation?

(5) What further facts and dates can be added to the general timeline noted above based on evidence submitted after this Court's August 25, 2008 Order? Such evidence would come from, but is not limited to, documents that were found, lost/destroyed documents that were found, and the new Rule 30(b)(6) deposition(s).

(6) Explain why should the letter from Calvin Li, in which he admitted graphite contamination, should/should not be the date of "anticipated litigation" for purposes of determining sanctions.

(7) Explain why the seventeen point report should/should not be the date of "anticipated litigation" for purposes of determining sanctions.

(8) How does the destroyed/lost evidence relate to the party's respective claim or defense?

## V. CONCLUSION

While there remains a possibility that at least some relevant documents may still be located based on the Court's August 28, 2008 Order, it remains unclear: (1) what was destroyed; (2) when it was destroyed; and (3) when Taishan could have reasonably anticipated litigation. Both parties are hereby ordered to file supplemental briefs on these three topics and the eight inquiries above. The supplemental briefs are due ten days after the completion of the deposition of Taishan's new corporate designee(s). As an exhibit to these briefs, each party is to submit a chronological timeline of events to help determine who knew what and when. Upon receipt of those supplemental materials, the Court will determine if a further hearing is warranted on Glasforms' motion for sanctions.

IT IS SO ORDERED.

Dated: September 19, 2008

RICHARD SEEBORG
United States Magistrate Judge

9

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

April E. Sellers     april.sellers@bakerd.com

David K. Herzog     david.herzog@bakerd.com

Eugene Ashley     eashley@hopkinscarley.com, ihernandez@hopkinscarely.com, ihernandez@hopkinscarley.com, jdooley@hopkinscarley.com

Jennifer M. Phelps     jennifer.phelps@bakerd.com, debora.schmid@bakerd.com

Lisa J. Cummins     lcummins@campbellwarburton.com

Noelle Dunn     gcordova@hopkinscarley.com, ndunn@hopkinscarley.com

Robert A. Christopher     rchristopher@hopkinscarley.com, ihernandez@hopkinscarley.com

Sophie N. Froelich     sfroelich@nossaman.com, ntorpey@nossaman.com

Tod C. Gurney     tgurney@hopkinscarley.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 9/19/08**                                                                 **Richard W. Wieking, Clerk**

                                                                                    **By:     Chambers**

INTERIM ORDER REGARDING DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION FOR SANCTIONS
C 06-3359 JF (RS)

10