**United States District Court**
For the Northern District of California

***E-FILED 10/29/08*ced*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONG AH TIRE & RUBBER CO., LTD., | NO. C 06-3359 JF (RS) |
| Plaintiff, | **ORDER DENYING THIRD-PARTY DEFENDANTS' MOTIONS TO COMPEL, AND FOR SANCTIONS** |
| v. | |
| GLASFORMS, INC., | |
| Defendant/Third-Party Plaintiff, | |
| v. | |
| CTG INTERNATIONAL (NORTH AMERICA) INC., et al., | |
| Third-Party Defendants. | |

## I. INTRODUCTION

Pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure, third-party defendants CTG International (North America), Inc. ("CTG") and Taishan Fiberglass, Inc. ("Taishan") (collectively "defendants") move to compel defendant/third-party plaintiff Glasforms, Inc. ("Glasforms") to produce documents and tangible items. Defendants also move for sanctions against Glasforms for spoliation and destruction of documents under Rules 11, 26(g), and 37(a)(4). Both motions spring from evidence defendants claim Glasforms has not produced such as emails and actual samples of fiberglass. Glasforms opposes both motions. For the reasons stated below, defendants' motion to compel and motion for sanctions will be denied.

1

## II. DISCUSSION

A.  Glasforms' Duty to Preserve Documents

As an initial matter, both of these related motions turn on when Glasforms reasonably anticipated litigation and was thereby under a duty to preserve relevant documents. In Glasforms' July 2, 2008 motion to compel and motion for sanctions, it argued that defendants' duty to preserve evidence began in October 2004. Defendants likewise contend that Glasforms' duty to preserve documents started at that same time. In the September 19, 2008 Interim Order on Glasform's motion for sanctions, issued prior to defendants' pending motions, this Court discussed two alternative triggering dates on which the duty to preserve might have arisen: February 2005 (when Taishan prepared a seventeen point report concerning possible problems with its product) or September 6, 2005 (when a letter from defendants confirmed graphite contamination). Nothing in defendants' moving papers suggest a basis to revisit that conclusion by adjusting back in time the operative "anticipation" date to October 2004. In any event, even were such earlier date employed, as set forth below, the disposition of defendants' motions would remain unchanged.[1]

B.  Motion to Compel

The motion to compel addresses three issues. According to defendants, Glasforms: (1) is required to keep producing documents that concern failures that occurred within the January 2000 to December 15, 2007 time frame; (2) has not fulfilled its obligations concerning the production of emails; and (3) was obligated to preserve and produce failed tangible products containing other suppliers' fiberglass.

1.  Documents Pertaining to Failures During the Relevant Time Period

Defendants contend that Glasforms' own production process caused the problems about which it complains, as evidenced by the fact that Glasforms experienced electrical failures both before and after it used Taishan's fiberglass to manufacture insulator cores. Defendants argue that Glasforms must produce documents after December 17, 2005, that concern failures occurring within

---

[1] Defendants do not provide any evidentiary support for the proposition that Glasforms should have anticipated litigation in October 2004. Indeed, the only reference to the record that defendants do make appears in their reply to its motion to compel, which identifies a June 29, 2005 email in which Glasforms discusses passing on liability for the fiberglass failures to Taishan. Phelps Decl., Ex. B.

2

that seven year time period. In its previous motion to compel, defendants attempted to receive documents relating to document request number fifteen from January 1, 2000, until the present. In the September 3, 2008 Order on that motion, the Court limited Glasforms' production obligation for that request to the original discovery cut-off date, December 15, 2007. While a different discovery request is involved here, the propriety of a similar cut-off makes sense. Documents up to the present are far enough removed from the relevant events which occurred over four years ago such that a stronger showing of relevance would need to be shown to justify the burden and expense of production.

Even adopting that December 2007 cut-off date, defendants argue that the duty to supplement would mandate the production of materials generated after such date. Rule 26(e)(1) of the Federal Rules of Civil Procedure provides in pertinent part that, a party:

> [M]ust supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]

The duty to supplement under Rule 26(e)(1) is directed to documents generated during the relevant time frame previously not produced but subsequently discovered. To say that the duty to supplement covers documents generated after that date would render meaningless any delineated time period for production. Consequently, despite defendants' reference to Rule 26(e)(1), nothing in that rule imposes a never ending obligation to produce documents continuously as they are created, and the seven year window that has been provided to defendants is an adequate time frame within which to discover the nature of the failures relevant to the defenses asserted.

2.   <u>Production of Email</u>

Raised for the first time in its reply, defendants allege that Glasforms has not fulfilled its obligations concerning the production of two sets of emails. The first set belongs to Glasforms' production manager, Roger Bass. Defendants put forth that Bass deleted all relevant emails before anyone at Glasforms asked him to preserve them. Bass' deposition transcript, on which defendants rely for that proposition, is much less clear. Bass declares that in 2006 he first was asked to gather emails that might be relevant to the litigation. Sellers Decl., Ex I at 8. Prior to being told to

1 maintain any emails, he deleted a large portion of his inbox in the standard course of business. *Id*. at
2 9. Bass explained that he receives up to one-hundred twenty emails per day and when his inbox
3 reaches five thousand messages, he deletes three thousand emails as instructed by Glasforms'
4 computer professional in order to keep the network from running too slowly. Regardless of when
5 the emails were deleted, defendants speculate without support that the deleted emails are relevant
6 because Bass is Glasforms' production manager. Bass was not, as Glasforms asserts and defendants
7 do not dispute, the production manager at the time the rods containing Taishan fiberglass were
8 manufactured. Dunn Decl., Ex. Q at 46-47. As a result, defendants fail to meet their burden of
9 showing why Bass would have any relevant emails that they have not already received from the
10 1,500 email pages previously produced from other sources.

11 The second set of emails belongs to Glasforms' head of quality, Miles Hume. Glasforms
12 alleges that Hume was not told to preserve emails until well after Glasforms filed suit in 2006.
13 Again, as Glasforms sets forth, the deposition transcript reflects that Hume did not have a clear
14 memory of when he was asked to preserve emails. Instead, when pressed for an exact date Hume
15 responded that it was "sometime" in 2006, and when pressed further he equivocally said, "maybe
16 spring." Such an imprecise showing that more relevant emails must exist and should be produced
17 based on this testimony alone is insufficient, especially in that Glasforms apparently has produced
18 voluminous amounts of emails and searched for such materials from Hume and others within the
19 designated seven year time period.

20       3.      <u>Preservation and Production of Failed Fiberglass from Other Suppliers</u>

21 Defendants maintain that Glasforms was obligated to preserve and produce actual product in
22 the form of insulator rods or portions thereof containing other suppliers' fiberglass. In line with its
23 argument, defendants identify document request numbers two, twenty-eight, and fifty-five along
24 with interrogatory number five, served on July 28, 2006, with which Glasforms allegedly has not
25 complied.

26 Request number twenty-eight, according to defendants, requires Glasforms to produce
27 everything related to its contention about contaminated Taishan fiberglass, including raw fiberglass,
28 finished rods, and finished insulators (as well as specimens cut from such insulators). In addition,

4

1  the request seeks all potentially contaminated items in Glasforms' possession or control that do *not*
2  contain Taishan fiberglass, whether sent to an outside laboratory, and/or stored by Glasforms'
3  customers. Request number twenty-eight, however, contains the words "as alleged in this lawsuit,"
4  which Glasforms interpreted to limit production of items to those containing Taishan fiberglass at
5  issue in this litigation.

6  In response to this request, Glasforms permitted defendants to inspect its San Jose,
7  California, facility on September 7, 2006. White Decl., ¶ 8. At that inspection, defendants inspected
8  Taishan fiberglass, ten samples of failed insulators and insulating cores made with Taishan
9  fiberglass, and one sample of a failed insulating core rod manufactured with fiberglass from a
10  different supplier. *Id*. Then again on January 23, 2007, defendants inspected Glasforms'
11  Birmingham, Alabama, facility where defendants were shown raw Taishan fiberglass. *Id*., ¶ 9.
12  Later, all of these materials were released to defendants for further inspection and testing, including
13  fiberglass from all three suppliers Glasforms used from 2004 to 2006.

14  Even assuming request twenty-eight requires production of rods, fiberglass, and insulators
15  from sources other than Taishan, defendants were well aware that Glasforms had limited its
16  discovery to Taishan products in its production and from its August 30, 2006, discovery responses.
17  Sellers Decl., Ex. B. As explained above, defendants also were permitted to inspect examples of
18  rods made with fiberglass from other suppliers. If defendants had made their request to produce all
19  such items then, Glasforms would have been in a position to respond. To wait two years, however,
20  before raising that alleged inadequacy in Glasforms' production is simply too late. Glasforms has
21  satisfied its discovery obligations in connection with request twenty-eight.

22  Defendants further request that "retains" be produced. Retains are small pieces of insulating
23  rods cut out at the end of each rod in the course of the manufacturing process. They are kept for use
24  during manufacturing and in-process testing. In October 2004, Glasforms provided Taishan with
25  samples of burned insulator rods. Dunn Decl., Ex. G at 349. The retains that defendants now seek
26  were cut from those same insulator rods. In fact, Taishan cut samples from them and conducted tests
27  on the resulting pieces. *Id*. With such an ample opportunity to test the samples, defendants have not
28  met their burden of showing how the retains are relevant or how they would be prejudiced by not

5

having access to them.[2]

Defendants' interrogatory number five and request number two require Glasforms to: (1) identify every document and *thing* relating to any complaint Glasforms has received in the past five years; and (2) produce all of those documents and things — including raw fiberglass, rods, and finished insulators — irrespective of whether the product that failed contained Taishan fiberglass. As explained above, Glasforms produced a sample of these materials to defendants and allowed inspections of its facilities. Glasforms' production in response to interrogatory number five and request number two is adequate.

Finally, request number fifty-five seeks everything relating to any of Glasforms' efforts to investigate possible causes for the failures that occurred to the fiberglass as well as to fiberglass other than Taishan's. In support of its argument, defendants simply state: "Glasforms has sought to evade th[is] request, for reasons that Taishan and CTG submit are now apparent." Motion to Compel at 7. Such a request without more is not sufficient on a motion to compel, especially when it appears that Glasforms has submitted samples of defective rods, opened its facilities for inspection, and produced extensive documents and emails. Glasforms has satisfied its discovery obligations in connection with this request.

C.  Motion for Sanctions

Defendants premise their separate motion for sanctions on Glasforms' alleged failure to respond to discovery as outlined in the motion to compel, accompanied by the suggestion that such responsive materials were intentionally destroyed. The particular remedy or "sanction" defendants seek is to require Glasforms to report, under oath, what relevant documents and things existed within its custody and control beginning on October 2004 and explain when and why any such items have been discarded or destroyed. As defendants have been unable to support that essential premise, as described in this Court's denial of the motion to compel, the motion for sanctions will similarly be denied.

---

[2] Similar to the argument regarding the retains, defendants identify a small piece of fiberglass cut from the larger October 10, 2004 sample that has not been produced and its whereabouts are unknown. While Glasforms admits that it cannot find this small piece, defendants fail to show prejudice as they were in possession of the larger portion of the 2004 sample from which the small "lost" piece was cut. Dunn Decl., ¶ D.

### III. CONCLUSION

Accordingly, defendants' motions to compel and for sanctions are denied.[3]

IT IS SO ORDERED.

Dated: October 29, 2008

RICHARD SEEBORG
United States Magistrate Judge

---

[3] In its motion to compel, besides the three document requests and one interrogatory specifically identified, defendants direct the Court to refer to the Sellers Decl., Ex. F, for other document requests and interrogatories to which Glasforms allegedly did not adequately respond. In addition, defendants for the first time in their reply on the motion to compel list numerous other document requests and interrogatories that Glasforms supposedly has not adequately addressed. In so doing, however, defendants fail to detail any of these alleged deficiencies, and instead seem to tack these requests onto their motion without further argument. Those conclusory requests, therefore, are denied.

ORDER DENYING THIRD-PARTY DEFENDANTS' MOTIONS TO COMPEL, AND FOR SANCTIONS
C 06-3359 JF (RS)

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

April E. Sellers     april.sellers@bakerd.com

David K. Herzog      david.herzog@bakerd.com

Eugene Ashley     eashley@hopkinscarley.com, ihernandez@hopkinscarely.com, ihernandez@hopkinscarley.com, jdooley@hopkinscarley.com

Jennifer M. Phelps     jennifer.phelps@bakerd.com, debora.schmid@bakerd.com

Lisa J. Cummins     lcummins@campbellwarburton.com

Noelle Dunn     gcordova@hopkinscarley.com, ndunn@hopkinscarley.com

Robert A. Christopher     rchristopher@hopkinscarley.com, ihernandez@hopkinscarley.com

Sophie N. Froelich     sfroelich@nossaman.com, ntorpey@nossaman.com

Tod C. Gurney     tgurney@hopkinscarley.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 10/29/08**                                    **Richard W. Wieking, Clerk**

                                                       **By:**     **Chambers**

ORDER DENYING THIRD-PARTY DEFENDANTS' MOTIONS TO COMPEL, AND FOR SANCTIONS
C 06-3359 JF (RS)