**E-Filed 8/12/09**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONG AH TIRE & RUBBER CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> GLASFORMS, INC., <br><br> Defendant/Third-Party Plaintiff. <br><br> v. <br><br> CTG INTERNATIONAL (NORTH AMERICA) INC., and TAISHAN FIBERGLASS, INC., <br><br> Third-Party Defendants. | Case Number C 06-3359 JF (RS) <br><br> **ORDER[1] OVERRULING IN PART REMAINING OBJECTIONS TO MAGISTRATE JUDGE'S ORDER** <br><br> RE: Docket No. 315 |

## I. BACKGROUND

On July 20, 2009, this Court issued an order overruling Defendants' objections to all but one aspect of the Magistrate Judge's July 2, 2009 order granting Glasforms' motion for

---

[1] This disposition is not designated for publication in the official reports.

sanctions based on Taishan's improper destruction of evidence after litigation reasonably should have been anticipated. The Court reserved judgment and requested further briefing on the issue of whether Taishan's allegedly improper loss or destruction of certain graphite rollers that apparently were used in 2004 warranted sanctions. The Magistrate Judge justified the imposition of sanctions by explaining that (1) the rollers were relevant, in that they were the "most likely source of contamination," (2) Glasforms has been prejudiced because it now lacks a key piece of evidence–in the form of the rollers–and will be forced to rely on indirect evidence of the alleged cause of the contamination, and (3) "[t]he graphite rollers used to produce the 2004 fiberglass at issue were no longer identifiable by January 2006[,] . . . [which] was several months after the anticipated litigation date and just one year after being pinpointed in Taishan's seventeen point report as the probable source of contamination." *See* Sanctions Order, at 11:18-20.[2]

Having considered the parties' further briefing, the Court concludes that it was not clearly erroneous or contrary to law for the Magistrate Judge to conclude that some form of sanction was warranted for Taishan's loss of the rollers. *See* Fed. R. Civ. P. 72(a). However, because the circumstances surrounding the loss, miscategorization, or destruction of the rollers make the determination of Taishan's culpability an extremely close question, the Court will modify slightly the nature and scope of the sanction ordered by the Magistrate Judge.

## II. LEGAL STANDARD

"[D]ecisions by the magistrate judge on nondispositive matters are essentially final decisions of the district court which may be appealed in due course with other issues." *United States v. Abonce-Barrera*, 257 F.3d 959, 968 (9th Cir. 2001). However, if a party objects to a nondispositive order entered by a magistrate judge, that order may be set aside or modified if its factual findings are clearly erroneous or its conclusions are contrary to law. *See* Fed. R. Civ. P. 72(a).

---

[2] Taishan's reference to January 2006 appears to have corresponded to its legal argument that litigation could not reasonably have been anticipated before January 2006.

## III. DISCUSSION

**A. Taishan's obligation to preserve the rollers**

It is essentially undisputed that Taishan could not have known exactly which rollers were used to produce fiberglass sold to Glasforms. The rollers lack any identifying marks and are changed on and off the production line as needed. Glasforms contends, however, that Taishan *did* possess rollers identified as having been used on the production line where glass sold to Glasforms was produced, but that Taishan discarded or misplaced the rollers at some unknown time either before or after the date on which Taishan reasonably should have anticipated litigation. Glasforms draws this conclusion from two statements made by Zhang Guo, Taishan's manager of quality assurance.

The first relevant statement was that Zhang had ordered that two rollers be "set aside" around the time Taishan created the internal 17-point report identifying graphite from its rollers as the likely cause of Glasforms' product failures. It appears that the rollers were in a waste pile awaiting pickup for recycling. Zhang stated that "[a]fter [he] knew about this event [(presumably the failures of Glasforms' rods or the alleged carbon contamination in Taishan's plant)[3]], those rollers that we put in the waste storehouse, we took them out. We thought that they might be useful." Zhang Depo. V, at 662-64. The second relevant statement is Zhang's "admission" that a "certain portion" of rollers used in 2004 still are in use in Taishan's plant.

Glasforms' theory essentially is that Taishan should have known that *any* rollers used on production line no. 2, where glass sold to Glasforms was made, were relevant to this action. Glasforms thus appears to argue that Taishan should have kept a vigilant watch over any rollers that it "set aside," such that the disappearance of such rollers–or the lack of an explanation as to their location–in the months surrounding the anticipated litigation date is sanctionable. There are several difficulties with this reasoning. Principally, because the Magistrate Judge concluded that it would have been unreasonable to assume an anticipated litigation earlier than September

---

[3] The precise context cannot be determined from the selected pages of the Zhang deposition provided both by Defendants and Glasforms.

6, 2005, it is legally appropriate to assume that Taishan's interest in the cause of the failures prior to that date was purely pragmatic. In that context, the relatively unremarkable facts are that Taishan, having commissioned an internal report suggesting that graphite was the likely cause of the failures, pulled two rollers from a waste heap, set them aside because they might be "useful," cut a sample from one of them at the direction of CTGNA, and then at some point lost or discarded them. Given the clearly fungible nature of the rollers, it is difficult to see why Taishan should have been expected to keep careful track of particular rollers prior to anticipating litigation. As among the numerous rollers that were rotated on and off of the line in 2004–none of which could be identified with any certainty as rollers used to make glass sold to Glasforms–the "set aside" rollers had no special significance prior to the anticipation of litigation. More importantly, any number of things reasonably might have happened to those rollers in the course of Taishan's internal investigation, before litigation was anticipated–things of which Taishan's employees would have no particular memory, and of which there would be no records since Taishan does not keep records to track the interchangeable rollers. Thus, Taishan's lack of a clear explanation for the disappearance or miscategorization of the rollers, and its inability to say more than that the rollers "would have been recycled by January 2006" would not appear to indicate serious culpability.

With respect to Zhang's purported "admission" that some 2004 rollers still are in use today, Glasforms argues that the admission makes "Taishan's position that it could not identify the relevant rollers by the preservation date . . . simply not credible." Yet, aside from the fact that Zhang clearly was referring to a generalized percentage of rollers, rather than to specifically identifiable rollers, Zhang's testimony does not indicate that there was any way of tracking the rollers:

> Mr. Christopher: You told me that this [roller (Ex. 78, a cut piece of a 2004 roller produced to Glasforms)] was, in fact, used on production line 2 in 2004. I want to know how you know that. I understand that you told me you were not sure if it was used to make glass for Glasforms.
>
> Mr. Zhang: [T]his is a discarded oil coating roller, and it came from production line 2 as garbage. Our inference was that it came from the 2004 period. And the reason we made this inference was based on its service life or expected service life.

Zhang Depo., at 187:11-24. Zhang also testified that he asked Taishan's production line employees whether they could identify a particular roller or when it was used, and that all of these employees answered in the negative. In any event, Glasforms was given an opportunity to inspect Taishan's plant, and its focus on the continued existence of the 2004 rollers is at a minimum puzzling.

**B.     Prejudice to Glasforms**

Glasforms argues that "Taishan has hoped to avoid producing the[] used rollers because producing them would have likely revealed that the rollers shed graphite and become smaller in the repair and grinding process," but Glasforms has not explained why this is so. Zhang testified that Taishan does not grind and polish the rollers, but sends them out to a third-party to be ground and polished. *See* Zhang Depo. II, at 179:18-180:1. Zhang's testimony indicates further–and Glasforms does not dispute–that the rollers come back smooth and polished, with various forms of build-up having been removed. Glasforms' appears to contend that grinding and polishing of rollers makes them more susceptible to shedding graphite during use in production. But if that is so, it is unclear why Glasforms complains of having received polished or "refurbished" rollers. Glasforms surely could have tested the "refurbished" rollers to determine whether they are more prone to shedding graphite. Separately, even assuming it that ground or refurbished rollers that had been put back into production and were immersed in Taishan's sizing would have been more helpful than rollers that had been ground or refurbished but not returned to use, Glasforms had an opportunity to inspect Taishan's plant, where rollers from 2004 allegedly were in use, and there is no dispute that Taishan continues to use the same make and model of roller as it did in 2004. *See* Zhang Depo. II, at 188. Thus, it is somewhat difficult to conclude that Taishan's failure to track certain rollers allegedly used in 2004 rises to the level of sanctionable conduct.

**C.     Conclusions**

The Magistrate Judge's determination with respect to the rollers appears to rest on Taishan's inability to account for the "set aside" rollers as of the date on or after which litigation reasonably should have been anticipated. Despite its difficulty in ascribing to Taishan's conduct

5

the same level of culpability that the Magistrate Judge clearly and properly found with respect to every other category of destroyed document, the Court holds that it was neither clearly erroneous nor contrary to law for the Magistrate Judge to conclude that Taishan's lack of a convincing explanation for the loss, destruction, or miscategorization of the rollers warranted some kind of adverse instruction to the jury. The Magistrate Judge could have concluded–and apparently did conclude–that Taishan's failure to provide a compelling explanation for the loss of the two complete, intact rollers–viewed in conjunction with what he found to be Taishan's bad-faith destruction of numerous related documents–was improper and sanctionable in some measure. Furthermore, it was neither clearly erroneous nor contrary to law for the Magistrate Judge to impose sanctions despite the apparent availability of rollers from 2004 that still were in place on Taishan's production line when Glasforms inspected Taishan's plant. Undoubtedly, there would have been considerable added value to Glasforms in having specific, intact samples of rollers believed to have been used in 2004 on production line no. 2.

At the same time, however, broad adverse inference instructions of the kind appropriate for Taishan's other identified violations would be excessive in the context of the rollers. The justification for sanctions with respect to the rollers lies entirely in Taishan's arguably improper loss of the two "set aside" rollers–evidence that became available for some period of time because Taishan affirmatively chose to make it available, despite the lack of any contemporaneous legal obligation to do so. Any instruction therefore must be limited to the circumstances of the "set aside" rollers, not to some undefined pool of rollers that theoretically were available for Glasforms' inspection but that were destroyed improperly. In addition, the Court does not find adequate support for an instruction requiring the jury to draw an adverse inference from the circumstances surrounding the disappearance of the rollers. The determination of Taishan's culpability with respect to the rollers simply presents too close a question to warrant the extraordinary and drastic sanction of such an inference. Instead, the jury will be instructed that (1) it was not Taishan's ordinary manufacturing practice to track its graphite rollers, (2) nonetheless, after learning of Glasforms' product failures, it set aside, as useful in ascertaining the cause of the failures, certain rollers thought to have been used on the

production line where glass sent to Glasforms in 2004 was made, and (3) under circumstances that Taishan has not been able to explain, the rollers were lost, destroyed, or stored in a manner that prevented their identification.  The jury will be instructed that it is not required to draw an inference that the rollers would have provided evidence helpful to Glasforms and harmful to Taishan, but that it may draw such an inference if it sees fit to do so.

### IV. ORDER

Defendants' remaining objections to the Magistrate Judge's order are hereby overruled except to the extent that the Court will modify the nature and scope of the instruction ordered by the Magistrate Judge with respect to the rollers, as set forth above.

**IT IS SO ORDERED.**

DATED: 8/12/09

_____
JEREMY FOGEL
United States District Judge

1   This Order has been served electronically upon the following persons:

2   April E. Sellers     april.sellers@bakerd.com

3   David K. Herzog     david.herzog@bakerd.com

4
    Eugene Ashley      eashley@hopkinscarley.com, ihernandez@hopkinscarely.com,
5
    ihernandez@hopkinscarley.com, jdooley@hopkinscarley.com
6
7   Jennifer M. Phelps    jennifer.phelps@bakerd.com, debora.schmid@bakerd.com

8   Kevin M. Toner     kevin.toner@bakerd.com, judy.ferber@bakerd.com

9   Lisa J. Cummins     lcummins@campbellwarburton.com

10  Noelle Dunn     gcordova@hopkinscarley.com, ndunn@hopkinscarley.com

11
    Robert A. Christopher    rchristopher@hopkinscarley.com, ihernandez@hopkinscarley.com
12
13  Sophie N. Froelich     sfroelich@nossaman.com, ntorpey@nossaman.com

14  Tod C. Gurney     tgurney@hopkinscarley.com

15  Notice has been delivered by other means to:

16  Glasforms Inc.,
17  William Whitcom Faulkner
18  McManis, Faulkner & Morgan
    50 West San Fernando St., Suite 1000
19  San Jose, CA 95113

20

21

22

23

24

25

26

27

28

Case No. C 06-3359 JF (RS)
ORDER OVERRULING IN PART REMAINING OBJECTIONS TO MAGISTRATE JUDGE'S ORDER
(JFLC3)