*E-Filed 10/29/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONG AH TIRE & RUBBER CO., LTD. a Korean Corporation,<br><br>        Plaintiff,<br>  v.<br><br>GLASFORMS, INC., a California Corporation,<br><br>        Defendant/Third Party<br>        Plaintiff,<br>  v.<br><br>CTG INTERNATIONAL (NORTH AMERICA) INC., an Indiana Corporation; TAISHAN FIBERGLASS, INC., a Corporation Organized Under the People's Republic of China,<br><br>        Third Party Defendants.<br>_____/ | No. C 06-03359 JF (RS)<br><br>**ORDER GRANTING GLASFORMS, INC.'S APPLICATION FOR MONETARY AWARD OF ATTORNEYS' FEES AND COSTS** |

In a prior order issued July 2, 2009, the Court imposed sanctions on third-party defendant Taishan Fiberglass, Inc. ("Taishan"). That determination, designed to address the evidence spoliation in which Taishan engaged during this litigation, requires Taishan to pay the attorneys'

fees and related costs incurred by defendant/third-party plaintiff Glasforms, Inc. ("Glasforms") in the course of developing the record on Taishan's spoliation and in bringing a corresponding sanctions motion. *See* Order Granting in Part and Denying in Part Motion for Sanctions, filed July 2, 2009 (hereinafter, the "July 2 Order"). The July 2 Order instructed Glasforms to file an application for a monetary award of fees and costs in association with that activity. In response, Glasforms has submitted a request in the total amount of $257,055.97.

When, as here, attorneys' fees are being awarded pursuant to the discovery sanctions provisions of Federal Rule of Civil Procedure 37, courts generally use the "lodestar" approach to calculate the proper fee amounts. *Finley v. Hartford Life & Accident Ins. Co.*, 249 F.R.D. 329, 332-33 (N.D. Cal. 2008); *see Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (if a party is entitled to fees, the court must then determine what fees are reasonable); *Kraszewski v. State Farm Gen. Ins. Co.*, No. C 79-01261 TEH, 1984 WL 1027, at *5 (N.D. Cal. June 11, 1984) (applying lodestar approach to calculate attorneys' fees awarded to party that prevailed on Rule 37 motion for discovery abuse). The lodestar approach requires that the court determine first the number of hours reasonably expended and a reasonable hourly rate, considering each attorney's experience, reputation, and skill. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007); *Finley*, 249 F.R.D. at 333. Next, the court should examine the hours actually expended. "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and rates claimed." *Id.* "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. The court must exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* The court then multiplies the number of hours expended by the hourly rate to establish a "lodestar." *Welch*, 480 F.3d at 945.

In this case, Glasforms has submitted evidence reflecting that five attorneys and five support staff members worked on developing the record detailing spoliation of evidence by Taishan. The materials presented by Glasforms detail billing rates and experience levels for the various legal professionals involved in presenting the sanctions issue. Christopher Decl. at 4-6. In support of

these hourly rates, Glasforms has submitted a declaration from attorney Christopher, which states: "On information and belief, the billing rates for Glasforms' attorneys, paralegals, and case assistants reflect the prevailing market rates ordinarily and customarily charged by firms of similar size and stature within Santa Clara County." Christopher Decl., ¶ 14.  Although this evidence is somewhat thin, Taishan has nonetheless raised no objection to the requested hourly rates.  They appear generally reasonable, and the Court will adopt them. *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009) (awarding requested hourly rate after the opposing party failed to object).

Having established the hourly rates, the next step is to examine the hours Glasforms claims its attorneys and their support staff expended.  For that analysis, the parties have divided their discussion into three parts: (1) the first discovery deposition of Zhang Guo; (2) Glasforms's motion to compel documents, re-designation of documents, and further testimony from a knowledgeable corporate designee; and (3) the second discovery deposition of Zhang.

As to the first Zhang deposition, Glasforms requests 30% of the associated fees.  Taishan, on the other hand, contends that Glasforms is not entitled to any fees related to this deposition, because Glasforms cites the deposition no more than a handful of times in its sanctions motion.  Taishan is correct that the first Zhang deposition covered a wide variety of topics, including many that are unrelated to the development of the spoliation record (such as fiberglass manufacturing at Taishan, the contamination issue, the seventeen point report, and Taishan's use of graphite rollers). Nonetheless, Glasforms's 30% estimate appears to be roughly proportional to the amount of material potentially relevant to spoliation that can be gleaned from the deposition (regardless of how much of that relevant material Glasforms actually ended up directly relying upon in its sanctions motion).  Glasforms's 30% estimate will therefore be adopted.

As to Glasforms's motion to compel, Glasforms requests that Taishan reimburse it for 80% of the associated fees and costs.  Taishan, on the other hand, takes the position that only 10% of these fees and costs would constitute an appropriate award, on the theory that Glasforms's motion to compel overlaps with its motion for sanctions only by that percentage.  This argument is unfounded. A review of the two motions reveals that they are closely intertwined:  at the time both motions

were made, Glasforms knew that Taishan had withheld some evidence and destroyed other evidence, but it did not know exactly which evidence fell into which category. The scope of what evidence still existed did not become clear until after Glasforms deposed Zhang for the second time as a result of the Court's order granting the motion to compel. In other words, Glasforms first had to obtain a Court order compelling Taishan to admit it could not produce documents, before narrowing down those materials that were improperly destroyed. In light of this fact, Glasforms's proposal of 80% reimbursement is reasonable and will be adopted.

Finally, as to the second Zhang deposition, Glasforms requests 70% of the associated fees and costs. This second deposition was ordered by the Court in response to Glasforms's motion to compel. Like the first Zhang deposition, it touches on some topics that are unrelated to the instant dispute; however, a significant majority of it does, in fact, pertain to spoliation. Therefore Glasforms's request for 70% of the fees related to the deposition is reasonable and will be granted.

In addition to attacking the fees specifically associated with the two Zhang depositions and Glasforms's motion to compel, Taishan also points out that, as a general matter, Glasforms was not entirely successful in its motion for sanctions. This point is relevant because, if a fee applicant fails to prevail on claims "unrelated" to those on which he succeeds, the time expended on the unrelated and unsuccessful claims cannot be compensated. *Hensley*, 461 U.S. at 434. In such cases, the key question is whether the claims upon which the moving party failed to prevail were related to the successful claims. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). Related claims involve "a common core of facts" or are based on related legal theories, while unrelated claims are "distinctly different" and based on different facts and legal theories. *Id.*

In the July 2 Order, the Court determined that adverse inference instructions were not warranted for shift change records from April 2004 to June 2004, equipment maintenance logs from April 2004 to June 2004, materials relating to Taishan's experiment with rubber rollers, and records relating to the seventeen point report. Taishan argues, therefore, that it need not pay for time Glasforms spent developing the record for these items. This argument is unpersuasive. Even though the Court did not ultimately sanction Taishan with respect to all the categories of evidence

that Glasforms sought, each of these categories nonetheless arose from the same "common core of facts" contained within Glasforms's motion for sanctions. Accordingly, Glasforms's fees should not be reduced on the basis that it did not receive 100% of the relief it requested.

Taishan next claims that Glasforms is not entitled to a fee award for the 8.9 hours expended by Glasforms attorney Tod Gurney in developing the spoliation record, because Gurney's last time entry in early 2008 was made well before Glasforms's motion to compel was contemplated. A review of Gurney's billing record reveals that he was involved in preparing for the first Zhang deposition, reviewing translated documents, and writing correspondence to Taishan regarding deficiencies in production. All of these activities are related to developing the record on spoliation, and therefore Taishan's argument is without merit.

Glasforms claims it spent 901.5 hours related to developing the record for spoliation. The extensive billing records submitted by attorney Christopher list, for each attorney or staff member, the date on which work was performed, a description of the work performed on that day, the billable time relevant to spoliation, and the corresponding recoverable amount. Exh. B to Christopher Decl., at 2-54. The total amount thus incurred is $232,227.50, which constitutes Glasforms's lodestar. Glasforms's exhaustive breakdown, particularly the detailed descriptions of the tasks performed,[1] constitutes adequate documentation to support this lodestar. Accordingly, the application for attorneys' fees will be granted in full. Similarly, Glasforms has produced comprehensive documentation to support the $21,408.47 it claims to have incurred in costs. Bill of Costs, filed July 22, 2009. This request will likewise be granted. Finally, Glasforms projects that it will expend approximately $3,420.00 in pursuing the instant fee application, an amount that appears reasonable and which Taishan has not contested.

---

[1] Taishan has called into question a few portions of the billing records submitted by Glasforms, complaining, for example, that attorney Dunn recorded an allegedly excessive 116.4 hours drafting Glasforms's motions to compel and for sanctions. Taishan's challenges to particular tasks performed by Glasforms attorneys are oversimplified and unpersuasive. With respect to attorney Dunn's time expenditures on the motions to compel and for sanctions, for example, the billing records show Dunn spent the 116.4 hours not only drafting the motions, but also drafting associated declarations and proposed orders, reviewing associated deposition testimony, attending meetings, drafting emails, and performing other relevant tasks.

No. C 06-03359 JF (RS)
ORDER GRANTING APPLICATION FOR MONETARY AWARD

The sum total of these fees and costs is, therefore, $257,055.97.  Taishan is directed to remit this sum to Glasforms within 60 days of the date of the entry of this order.

IT IS SO ORDERED.

Dated:  10/29/09

RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE