1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-filed 4/23/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

DONG AH TIRE & RUBBER CO., LTD.,

Plaintiff,

v.

GLASFORMS, INC.,

Defendant.

Case Number C 06-3359 JF

ORDER[1] RE POST-TRIAL MOTIONS

[re:  document nos. 440, 444, 449, 452, 454, 493, 495]

On September 22, 2009, following a jury trial the Court entered judgment for third party plaintiff Glasforms, Inc. ("Glasforms") and against third-party defendants CTG International (North America) Inc. ("CTG") and Taishan Fiberglass, Inc. ("Taishan") (collectively, "Defendants").  The following post-trial motions are before the Court:  (1) Glasforms' motion for an award of attorneys' fees; (2) CTG's motion for judgment as a matter of law, or for a new trial; (3) Taishan's motion for judgment as a matter of law, or for a remittitur, or for a new trial; (4) CTG's motion to alter or amend the judgment; (5) Glasforms' motion for leave to register the judgment; (6) Glasforms' motion for review of the Clerk's taxation of costs; and (7) Taishan's

---

[1] This disposition is not designated for publication in the official reports.

1  objection to the Magistrate Judge's imposition of monetary sanctions.  The Court has considered

2  the moving and responding papers and the oral argument presented with respect to motions (1)-

3  (4); the Court concludes that motions (5)-(7) are appropriate for disposition without oral

4  argument.  *See* Civ. L.R. 7-1(b).

## I. BACKGROUND

6      Glasforms filed its third-party complaint in this action on July 26, 2006, alleging that raw

7  fiberglass that it purchased from CTG was contaminated with graphite, causing insulator rods

8  that Glasforms manufactured to be electrically conductive and therefore to fail when energized.

9  Glasforms alleged claims against CTG and its parent corporation, Taishan, for:  (1) breach of

10  contract for non-conforming goods; (2) breach of the implied warranty of merchantability; (3)

11  breach of the implied warranty of fitness for a particular purpose; (4) strict liability for defective

12  products; (5) negligence; (6) negligent misrepresentation; and (7) indemnification.  CTG and

13  Taishan denied that graphite contamination caused the failures, and asserted that Glasforms' own

14  production processes were responsible.  Additionally, CTG filed a counterclaim against

15  Glasforms, seeking payment of outstanding invoices in excess of $90,000.

16      On April 10, 2009, the Court granted partial summary judgment for CTG and Taishan

17  with respect to Glasforms' strict liability claim.  The case was tried to a jury on the parties'

18  remaining claims.  The parties stipulated that the Court would reduce any award in favor of

19  Glasforms by $116,880 to reflect the unpaid invoices claimed by CTG plus prejudgment interest.

20  On September 16, 2009, the jury rendered a verdict in favor of Glasforms.  The verdict form

21  reflected the jury's determination that CTG and Taishan breached "one or more express or

22  implied terms of a contract, including express or implied warranties," but that CTG and Taishan

23  were not liable for negligence or negligent misrepresentation.  The jury awarded Glasforms

24  damages in the amount of $5,525,738.

## II. DISCUSSION

26  **A.    Glasforms' Motion For An Award Of Attorneys' Fees**

27      At trial, Glasforms argued and sought to prove that it incurred $483,413.38 in attorneys'

28  fees to defend against the *Dong Ah* action, and that those fees were recoverable as consequential

2

damages flowing from Defendants' breach of contract and warranty.  The fees claim was reflected in trial exhibit 575, a table prepared by Glasforms' expert, Dan Ingberman, which listed each category of damages claimed by Glasforms along with the corresponding damages amount. The table, which was admitted in evidence, lists the following categories and amounts:

| Description | Amount Incl. Prejudgment Interest |
|---|---|
| Contaminated Goods, Scrapping, and Transport | $2,176,950 |
| Replacement Costs and Transport | $681,835 |
| New Testing | $154,222 |
| Testing to Determine Defect | $43,117 |
| Labor to Determine Defect | $602,817 |
| Lost Profits - Barry White Scenario | $1,746,797 |
| Reputation Restoration (PR Tour) | $547,600 |
| Legal fees to defend against Dong Ah action | $540,787[2] |
| Unpaid balance for glass purchased (held inventory) | ($116,880) |
| Total including prejudgment interest | $6,377,246 |

On September 14, 2009, prior to the conclusion of the trial, the Court ruled that although attorneys' fees may be recovered as a component of damages under certain circumstances, Glasforms had failed to present evidence sufficient to support a jury verdict in its favor with respect to its attorneys' fees incurred in defending against the *Dong Ah* action.  Trial Transcript ("Tr.") 2757:2-17.  Accordingly, the Court declined to submit the attorneys' fees component of Glasforms' damages claim to the jury, stating that:

> There's no evidence as to the reasonableness of the fees and there's no evidence as to the apportionment of the fees.  There's a – the material that's in evidence covers a period of time that is greater than the period of time that the *Dong Ah* litigation was pending.
>
> The jury doesn't have any way to really effect that apportionment in a thoughtful way, and I think they'd be required to speculate or take shortcuts.

*Id*. 2757:8-17.  The Court then stated as follows:

> Now, the thing that I'm not sure about is whether this issue can be raised post-trial, and there's some discussion of that in the briefing and there's a disagreement obviously between the parties as to whether this is a form of indemnity that can be raised to the court subsequently.
>
> So I don't think I have to rule on that at this point. . . .  What I'm saying is I don't think that that issue [of attorneys' fees] is properly teed up for the jury, and my

---

[2] The $540,787 figure represents the $483,413.38 in attorneys' fees claimed by Glasforms plus prejudgment interest.

1   ruling is expressly without prejudice to your right to raise this after trial.

2   *Id*. 2757:18 - 2759:15.

3       Glasforms characterizes the Court's ruling as follows: "On September 14, 2009, the

4   Court decided to withhold the attorneys' fees component of Glasforms' damages from the jury

5   and expressly reserved the issue of whether Glasforms was entitled to its attorneys' fees under an

6   equitable indemnity theory until after the jury had reached a verdict." Glasforms' Post-Trial

7   Motion For Award Of Attorneys' Fees at 2. However, the record reflects that the Court did *not*

8   "expressly reserve" an "equitable indemnity" theory, but rather concluded as a matter of law that

9   Glasforms had failed to present evidence sufficient to support a jury award in its favor on the

10  issue of attorneys' fees. Because the Court was *not sure* whether the issue could be raised post-

11  trial, the Court expressly made its ruling without prejudice to Glasforms' filing a post-trial

12  motion addressing attorneys' fees.

13      Having considered the parties' briefing and the authorities cited therein, the Court

14  concludes that Glasforms may not recharacterize its claim for attorneys fees – which it

15  consistently has characterized as a component of its contract damages – as an equitable claim for

16  implied indemnity suitable for trial to the Court. "Whether the Seventh Amendment authorizes a

17  jury trial in a particular case does not depend on the character of the overall action, but instead is

18  determined by the nature of the issue to be tried." *Palmer v. United States*, 652 F.2d 893, 895

19  (9th Cir. 1981) (internal quotation marks and citation omitted), *overruled on other grounds*,

20  *White v. McGinnis*, 903 F.2d 699 (9th Cir. 1990). "An issue is considered 'legal' when its

21  resolution involves the ascertainment and determination of legal rights or justifies a remedy

22  traditionally granted by common law courts." *Id*. "Recovery of damages is a remedy

23  traditionally granted by common law courts." *Id*. at 896. Accordingly, Defendants were entitled

24  to a jury trial on Glasforms' claim that it is entitled to attorneys' fees as a component of the

25  consequential damages flowing from Defendants' breach of contract.

26      Moreover, even if Defendants were *not* entitled to a jury trial on the issue of Glasforms'

27  attorneys' fees – that is, even if Glasforms could have moved to bifurcate that issue and have it

28  tried to the Court after the jury trial – Glasforms did not make such a motion. The issue of

4

1   Glasforms' entitlement to recover as contract damages the attorneys' fees incurred in defending

2   the *Dong Ah* action *in fact was tried to the jury*.  The Court refused to permit the jury to

3   adjudicate the issue *not* because it implicated equitable rather than legal claims, but because

4   Glasforms failed to present evidence from which a jury could find in its favor.  Glasforms has not

5   cited, and the Court has not discovered, any case in which a plaintiff was permitted to present a

6   post-trial claim for "equitable" relief under such circumstances.  Accordingly, Glasforms' motion

7   for an award of attorneys' fees will be denied.

8   **B.    Defendants' Motions For Judgment As A Matter Of Law Or In The Alternative For**

9        **A Remittitur[3] Or A New Trial**

10       **1.    Judgment As A Matter Of Law**

11          "If a party has been fully heard on an issue during a jury trial and the court finds that a

12   reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

13   issue, the court may:  (A) resolve the issue against the party; and (B) grant a motion for judgment

14   as a matter of law. . . ."  Fed. R. Civ. P. 50(a).  If the court denies a motion for judgment as a

15   matter of law ("JMOL") under Rule 50(a), the movant may renew the motion after entry of

16   judgment under Rule 50(b).  Fed. R. Civ. P. 50(b).  When evaluating a Rule 50(b) motion, the

17   court must "view the evidence in the light most favorable to the party in whose favor the jury

18   returned a verdict and draw all reasonable inferences in her favor."  *Lakeside-Scott v. Multnomah*

19   *County*, 556 F.3d 797, 802 (9th Cir. 2009).  "Judgment as a matter of law is proper when the

20   evidence permits only one reasonable conclusion and the conclusion is contrary to that reached

21   by the jury."  *Id.* (internal quotation marks and citation omitted).  Moreover, "JMOL is

22   appropriate when the jury could have relied only on speculation to reach its verdict."  *Id.* at 803.

23          Defendants argue that the evidence does not support a finding of liability because

24   Glasforms failed to prove that any particular rod manufactured with Defendants' glass fiber

25

26   _____

27       [3] While the caption of CTG's motion does not state that CTG seeks a remittitur in the
     event that the Court denies CTG's motion for judgment as a matter of law, the body of CTG's
28   brief does raise the possibility of a remittitur.  The caption of Taishan's motion expressly seeks a
     remittitur.

Case No. C 06-3359 JF
ORDER RE POST-TRIAL MOTIONS
(JFLC2)

1   failed as a result of graphite contamination or other defect.  Defendants' motions in effect seek to

2   relitigate the probative value of virtually all of the evidence that was introduced at trial.  Each

3   party submitted substantial evidence, bolstered by expert testimony, in support of its position.

4   The jury found Glasforms' showing to be the more compelling.  That showing included, *inter*

5   *alia*, evidence of graphite contamination and other defects in Defendants' glass fiber, and

6   evidence of a spike in failure rate during the period of time that Glasforms was using

7   Defendants' product.  The jury reasonably could have concluded, based upon the record as a

8   whole, that Defendants' glass fiber was defective and caused Glasforms' rods to fail.  While the

9   Court is of the opinion that substantial evidence would have supported the opposite conclusion as

10  well, conflicts in the evidence do not provide a sufficient basis for setting aside the verdict.  *See*

11  *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 35 (1994) ("Courts are not free to

12  reweigh the evidence and set aside the jury verdict merely because the jury could have drawn

13  different inferences or conclusions or because judges feel that other results are more

14  reasonable.").

15       Defendants also argue that the verdict is inconsistent because the jury found both that

16  CTG acted as an agent of Taishan and that CTG is liable for breach of contract.  Defendants cite

17  the *Restatement (Second) of Agency* § 328 (1958)[4] for the general proposition that an agent who

18  enters into a contract on behalf of a disclosed or partially disclosed principal cannot be held

19  liable for breaching the contract.  What § 328 actually says, however, is that "[a]n agent, by

20  making a contract *only on behalf of* a competent disclosed or partially disclosed principal whom

21  he has power so to bind, does not thereby become liable for its nonperformance."  *Restatement*

22  *(Second) of Agency* § 328 (emphasis added).  The comment to § 328 notes that "[i]n many cases

23  the agent is a party to the contract made by him on behalf of a disclosed principal and, as such, is

24  responsible for its performance."  *Id*. cmt. b; *see also Publicker Industries, Inc. v. Roman*

25  *Ceramics Corp.*, 652 F.2d 340, 344 n.10 (3d Cir. 1981) (discussing circumstances under which

26  an agent may be held liable for breach of contract).  The jury could have concluded that CTG

27

28       [4] The *Restatement (Second) of Agency* has been superseded by the *Restatement (Third) of Agency*, which was adopted in 2005 and published in 2006.

6

1  contracted with Glasforms both on its own behalf and as an agent of Taishan.

2      Alternatively, the jury could have concluded that CTG was liable for breach of contract

3  under an alter ego theory.  Defendants argue that the verdict form does not support a finding of

4  alter ego, because while the jury found the first element necessary to establish alter ego, unity of

5  interest, the jury was silent as the second element, inequitable result.[5]  The jury in fact was

6  instructed as to both elements.  The jury clearly found that CTG and Taishan are alter egos of

7  each other.  The fact that the verdict form did not reference the second element explicitly at most

8  reflects a flaw in the verdict form rather than in the deliberation process.  Defendants waived any

9  challenge to the verdict form by failing to raise such challenge until after the jury rendered its

10  verdict and was discharged.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

11  1109-10 (9th Cir. 2001).

12      Because substantial evidence in the record supports the jury's verdict on liability, the

13  Court will deny Defendants' motions for JMOL.

14      **2.      Remittitur Or New Trial**

15      After a jury trial, the Court may grant a new trial on some or all of the issues "for any

16  reason for which a new trial has heretofore been granted in an action at law in federal court."

17  Fed. R. Civ. P. 59(a).  "Historically recognized grounds include, but are not limited to, claims

18  that the verdict is against the weight of the evidence, that the damages are excessive, or that, for

19  other reasons, the trial was not fair to the party moving."  *Molski v. M.J. Cable, Inc.*, 481 F.3d

20  724, 729 (9th Cir. 2007) (internal quotation marks and citation omitted).  This standard differs

21  from that applicable to Rule 50(b) motions because, even where the verdict is supported by

22  "substantial" evidence, the Court has the obligation to set aside the verdict under Rule 59(a) if

23  "the verdict is contrary to the clear weight of the evidence."  *Id*. (internal quotation marks and

24

25      [5] "The standard expression of the showing one must make to prevail on an alter ego claim

26  is that (1) there is such a unity of interest that the separate personalities of the corporations no
longer exist; and (2) inequitable results will follow if the corporate separateness is respected."

27  *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Superior Court*, 60 Cal. App. 4th 248, 257-
58 (1997) (internal quotation marks and citation omitted).

28

7

1  citation omitted).

2         As discussed above, the verdict on liability was supported by substantial evidence.

3  Defendants assert that they nonetheless were deprived of a fair trial because the adverse inference

4  instructions given by the Court constituted an insufficient punishment for Glasforms' destruction

5  of evidence.  The parties have litigated this issue extensively both before the Magistrate Judge

6  and before this Court.  The Court declines to revisit the issue.

7         Defendants also attempt to relitigate the Court's decision to admit evidence of liability

8  insurance.  The Court considered all of the parties' arguments on this issue before making its

9  ruling.  The Court remains of the opinion that the evidence was relevant to the issue of alter ego

10  and thus properly was admitted.

11         Finally, Defendants contend that the admission of evidence as to Glasforms' attorneys'

12  fees was prejudicial, because although the Court ultimately instructed the jury that it could not

13  award damages for attorneys' fees, the jury may have ignored the Court's instruction.  The Court

14  must presume that the jury followed the instructions it was given, and there is no evidence to the

15  contrary in the record.  *See CSX Transp., Inc. v. Hensley*, --- U.S. ---, 129 S.Ct. 2139, 2141

16  (2009) ("juries are presumed to follow the court's instructions").

17         Defendants claim that the damages award is excessive.  Glasforms sought $6,377.246 in

18  damages, including prejudgment interest.  The Court instructed the jury that it could not award

19  attorneys' fees, which accounted for $540,787 of the total damages requested.  Thus the jury

20  could have awarded a maximum of $5,953,339 in damages if it awarded Glasforms everything it

21  requested in the various categories and added in the $116,880 in unpaid invoices that the Court

22  made clear ultimately would be deducted from the damages award:

23  | | |
    |---|---|
    | Contaminated Goods, Scrapping, and Transport | $2,176,950 |
    | Replacement Costs and Transport | $681,835 |
24  | New Testing | $154,222 |
    | Testing to Determine Defect | $43,117 |
25  | Labor to Determine Defect | $602,817 |
    | Lost Profits - Barry White Scenario | $1,746,797 |
26  | Reputation Restoration (PR Tour) | $547,600 |

27  The jury awarded a total of $5,525,738 in damages.  The jury clearly awarded less than the

28  maximum requested with respect to one or more category of damages, but nothing in the verdict

8

1   form or elsewhere in the record suggests precisely how the jury calculated the award. However,

2   the Court concludes that regardless of how the jury arrived at the figure of $5,525,738, the award

3   is excessive because there is insufficient evidence in the record to support any award of damages

4   for the categories of lost profits or reputation restoration.

5          In order to recover damages for lost profits, the lost profits "must be proven to be certain

6   both as to their occurrence and their extent, albeit not with mathematical precision." *Lewis Jorge*

7   *Const. Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 975 (2004) (internal

8   quotation marks and citations omitted). Glasforms claimed to have lost profits through the loss

9   of business from one customer, E.B. Rebosio, as well as loss of business in the Korean market.

10  With respect to E.B. Rebosio, Glasforms did not present any evidence that it actually had and lost

11  contracts for further sales with that company. With respect to the Korean market, the testimony

12  showed that Glasforms was only starting to develop a customer base. Glasforms did not present

13  evidence sufficient to establish that but for the product failures at issue it would have sold

14  $1,000,000 annually in the Korean market. Apparently, Glasforms' experts simply accepted the

15  numbers Glasforms provided to them and performed loss calculations consistent therewith.

16         Glasforms likewise failed to present evidence sufficient to establish that the money

17  expended on the PR Tour was a foreseeable consequence of Defendants' breach of contract.

18  Glasforms determined that it needed to go on a forty-company rehabilitation tour, but did not

19  present evidence that it had concrete expectations of business from those companies prior to the

20  rod failures attributable to Defendants.

21         Once the categories of lost profits and the PR Tour are taken out of the calculation, the

22  maximum amount of damages that the jury could have awarded is $3,658,942.[6] The Court thus

23  concludes that any damages award greater than this amount necessarily is excessive. "When the

24  court, after viewing the evidence concerning damages in a light most favorable to the prevailing

25  party, determines that the damages award is excessive, it has two alternatives. It may grant

26  defendant's motion for a new trial or deny the motion conditional upon the prevailing party

27

28         [6] Again, this figure includes the $116,880 in unpaid invoices that the Court indicated
    would be subtracted from any damages awarded by the jury.

                                                    9

1   accepting a remittitur." *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir.

2   1983).  "A remittitur is a device which the court may invoke to correct an excessive verdict." *Id.*

3   at 603 n.3 (citation omitted).  "The prevailing party is given the option of either submitting to a

4   new trial or of accepting a reduced amount of damage which the court considers justified." *Id.*

5          Accordingly, Glasforms may accept a reduced judgment in the amount of $3,658,942 or

6   retry its damages case.

7   **C.     CTG's Motion To Alter Or Amend The Judgment**

8          CTG moves to alter or amend the judgment pursuant to Federal Rule of Civil Procedure

9   59(e).  "Under Rule 59(e), it is appropriate to alter or amend a judgment if (1) the district court is

10  presented with newly discovered evidence, (2) the district court committed clear error or made an

11  initial decision that was manifestly unjust, or (3) there is an intervening change in controlling

12  law." *United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009)

13  (internal quotation marks and citation omitted).

14         CTG seeks to amend the judgment in two respects.  First, it requests that the Court make

15  a number of ministerial changes to the judgment so that it:  (1) reflects both defendants' names;

16  (2) indicates which defendants are liable and for how much; (3) addresses disposition of CTG's

17  counterclaim; and (4) indicates that the judgment was approved by the Court as to form.

18  Glasforms disputes that the requested ministerial changes are required to render the judgment

19  valid, but has no objection to the proposed nonsubstantive changes being effected *nunc pro tunc*.

20  Accordingly, the Court will grant this aspect of CTG's motion.  CTG shall submit a proposed

21  amended judgment after it has been approved as to form by Glasforms and Taishan.[7]

22         Second, CTG requests that the Court amend the judgment to reflect entry of judgment for

23  CTG and against Glasforms.  That aspect of the motion will be denied for the reasons discussed

24  above.

25  **D.     Glasforms' Motion For Leave To Register Judgment**

26         This motion is premature in light of the Court's disposition of Defendants' motions for a

27  ───────────────

28         [7] Of course, this ruling may have little practical effect given the Court's disposition of
    Defendants' motions for a new trial.

                                                10

1    new trial.  However, should Glasforms agree to the remittitur, it may proceed to register the

2    reduced judgment without separately seeking leave to do so.

3    **E.    Glasforms' Motion For Review Of The Clerk's Taxation Of Costs**

4             Following entry of judgment in its favor, Glasforms requested that the Clerk of the Court

5    tax costs in the amount of $174,818.94.  The Clerk taxed costs in the amount of $77,906.75.

6    Glasforms seeks review of the Clerk's reduction of the cost bill.  Glasforms notes that the

7    Magistrate Judge awarded Glasforms certain of the costs reflected in its cost bill as sanctions for

8    Defendants' conduct.  Glasforms thus has adjusted its total cost request to $171,406.62.

9             The Court concludes that a portion of the disputed costs is recoverable.  The Clerk

10   declined to award the $52,998.45 in costs incurred by Glasforms for translation of documents.

11   The Civil Local Rules do not address whether document translation costs are recoverable, and

12   there is a split in authority on the issue.  The Court is persuaded by the reasoning set forth in

13   those cases permitting recovery of document translation costs when such costs are necessarily

14   incurred.  *See Competitive Technologies v. Fujitsu Ltd*., 2006 WL 6338914, at *11 (N.D. Cal.

15   Aug. 23, 2006) (discussing cases).  Glasforms would not have been able to litigate this action

16   without translating the Chinese language documents produced by Defendants.  Accordingly, the

17   Court will award Glasforms the $52,998.45 incurred for translation of documents.

18            The Court likewise will award Glasforms the $17,523.50 incurred in printing trial

19   exhibits.  *See* 28 U.S.C. § 1920(4) (permitting costs for "[f]ees for exemplification and the costs

20   of making copies of any materials where the copies are necessarily obtained for use in the case").

21   Glasforms also may recover the $318.47 it expended in creating demonstrative trial exhibits and

22   photocopying deposition excerpts for use at trial.  *See* Civ. L.R. 54-3(d)(5) (permitting costs of

23   copies "reasonably necessary to assist the jury or the Court in understanding the issues at the

24   trial").  The visual aids used by all parties assisted both the Court and the jury in understanding

25   the case.

26            The Court agrees with Defendants, however, that Glasforms may not recover costs in

27   excess of $30,000 incurred for daily trial transcripts and hearing transcripts.  Civil Local Rule 54-

28   3 provides that, with exceptions not relevant here, "[t]he cost of other [reporter's] transcripts is

11

1   not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be

2   recoverable by counsel." Civ. L.R. 54-3(b)(3). Glasforms did not obtain the Court's approval or

3   a stipulation before incurring the cost of daily transcripts. Moreover, while there is some

4   authority for permitting recovery of trial transcript costs "under unusual circumstances," *see*

5   *MEMC Elec. Materials v. Mitsubishi Materials*, 2004 WL 5361246, at *2 (N.D. Cal. Oct. 22,

6   2004), Glasforms has not demonstrated that such circumstances are present here. Glasforms

7   advances an alternative argument that the costs of the transcripts are recoverable under Civil

8   Local Rule 54-3(b)(1), which permits recovery of transcript costs if "necessarily obtained for an

9   appeal." No appeal has been filed in this case.

10          The Court also agrees with Defendants that Glasforms may not recover the cost of

11   obtaining the video deposition of Zhang Guo. Civil Local Rule 54-3(c)(1) provides for recovery

12   of "[t]he cost of an original and one copy of any deposition (including video taped depositions)."

13   Glasforms separately has claimed the costs of obtaining one original and one copy of the

14   deposition transcript. Glasforms is not entitled to the additional cost of obtaining a videotape of

15   the deposition.

16          Accordingly, the Court will direct the Clerk to tax additional costs in the amount of

17   $70,840.42 for a total award of $148,747.17 in costs.

18   **F.      Taishan's Objection To The Magistrate Judge's Imposition Of Monetary Sanctions**

19          Taishan objects to the Magistrate Judge's imposition of monetary sanctions in the amount

20   of $257,033.97. When a party objects to a nondispositive ruling issued by a magistrate judge, the

21   district court must "modify or set aside any part of the order that is clearly erroneous or is

22   contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). A decision is clearly

23   erroneous if, after reviewing the entire record, the district court is "left with the definite and firm

24   conviction that a mistake has been committed." *United States v. Silverman*, 861 F.2d 571, 576-

25   77 (9th Cir. 1998). However, the district judge may not simply substitute his or her own

26   judgment for that of the magistrate judge. *Grives v. City & County of San Francisco*, 951 F.2d

27   236, 241 (9th Cir. 1991). A decision is contrary to law "if it fails to apply or misapplies relevant

28   statutes, case law, or rules of procedure." *United States v. Cathcart*, No. C 07-4762 PJH, 2009

Case No. C 06-3359 JF
ORDER RE POST-TRIAL MOTIONS
(JFLC2)

1  WL 1764642, at *2 (N.D. Cal. June 18, 2009).

2       The Court has reviewed carefully the Magistrate Judge's order, the briefing submitted by

3  the parties,[8] and the record in this case.  While this Court might not have imposed such a harsh

4  sanction based upon this record, the Court concludes that Magistrate Judge's order is not clearly

5  erroneous or contrary to law.  Accordingly, Taishan's objection will be overruled.

6  **III. ORDER**

7      (1)    Glasforms' motion for an award of attorneys' fees is DENIED;

8      (2)    Defendants' motions for judgment as a matter of law are DENIED;

9      (3)    Defendants' motions for remittitur or for a new trial are GRANTED as set forth
             herein;

10

11     (4)    CTG's motion to alter or amend the judgment is GRANTED with respect to the
             requested ministerial changes to the judgment and otherwise is DENIED;

12     (5)    Glasforms' motion to register the judgment is DENIED WITHOUT PREJUDICE
             as premature;

13

14     (6)    Glasforms' motion for review of taxed costs is GRANTED IN PART AND
             DENIED IN PART as set forth herein; and

15     (7)    Taishan's objection to the Magistrate Judge's imposition of sanctions is
             OVERRULED.

16

17      Glasforms shall advise the Court and counsel of its election with respect to the remittitur

18 within fifteen (15) days of the date of this order.

19

20 DATED:  April 23, 2010

21                               JEREMY FOGEL

22                               United States District Judge

23

24

25

26

_____

27     [8] Glasforms' objection to Taishan's reply in support of its objection is overruled.  While

28 Glasforms technically is correct that the reply is not authorized by the Civil Local Rules or the
briefing schedule, the Court in the exercise of its discretion will consider it.

13

Case No. C 06-3359 JF
ORDER RE POST-TRIAL MOTIONS
(JFLC2)